UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| ADAM WARDEN,                        } | |
| } | |
| Plaintiff,                          } | |
| } | |
| v.                                  } | Case No.: 5:14-CV-01111-MHH |
| } | |
| CAROLYN W. COLVIN,                  } | |
| Commissioner of the                 } | |
| Social Security Administration,     } | |
| } | |
| Defendant.                          } | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g), plaintiff Adam Warden seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied Mr. Warden's claim for a period of disability and disability insurance benefits. After careful review, the Court affirms the Commissioner's decision.

## I.     PROCEDURAL HISTORY

Mr. Warden applied for a period of disability and disability insurance benefits on May 13, 2011. (Doc. 8-6, p.2). Mr. Warden alleges that his disability

1

began on May 1, 2010.[1] (Doc. 8-3, pp. 27, 43; Doc. 8-5, pp. 9-10). The Commissioner initially denied Mr. Warden's claim on July 28, 2011, and Mr. Warden requested a hearing before an Administrative Law Judge (ALJ). (Doc. 8-5, pp. 2-6, 9-10). The ALJ issued an unfavorable decision on September 19, 2012. (Doc. 8-3, pp. 22-38). On April 8, 2014, the Appeals Council declined Mr. Warden's request for review (Doc. 8-3, p. 2), making the Commissioner's decision final and a proper candidate for this Court's judicial review. *See* 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "reviews the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir.

---

[1] Mr. Warden originally alleged that his disability began on November 30, 2008. (Doc. 8-6, p. 2). During the administrative hearing, Mr. Warden amended his onset date to May 1, 2010. (Doc. 8-3, p. 43).

2004).  In making this evaluation, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ.  *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted).  If the ALJ's decision is supported by substantial evidence, the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards.  If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

### III.  SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven he is disabled, an ALJ follows a five-step sequential evaluation process.  The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant

can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Mr. Warden has not engaged in substantial gainful activity since May 1, 2010, the amended onset date. (Doc. 8-3, p. 27). The ALJ determined that Mr. Warden suffers from the following severe impairments: bilateral arthritis of the knees, degenerative disc disease of the lumbar spine, obesity, mood disorder, and anxiety. (Doc. 8-3, p. 27). Nevertheless, the ALJ concluded that Mr. Warden does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 8-3, p. 28).

The ALJ determined that despite his impairments, Mr. Warden has the residual functional capacity to perform light work as defined in 20 C.F.R 404.1567(b) except unskilled, with no climbing, crouching, crawling, kneeling, exposure to unprotected heights, or public interaction, and only occasional coworker interaction. (Doc. 8-3, pp. 29-33). Based on this RFC, the ALJ concluded that Mr. Warden is not able to perform his past relevant work as an auto mechanic, service manager, and diesel mechanic. (Doc. 8-3, p.33). Relying on testimony from a vocational expert, the ALJ found that jobs exist in the national economy that Mr. Warden can perform, including hand packer, assembler, and

sorter.  (Doc. 8-3, p. 34).  Therefore, the ALJ determined that Mr. Warden is not disabled as defined in the Social Security Act.  (Doc. 8-3, p. 35).

## IV.  ANALYSIS

Mr. Warden argues that he is entitled to relief from the ALJ's decision because substantial evidence does not support the ALJ's physical RFC determination that Mr. Warden can perform restricted light work.[2]  The Court disagrees.

A residual functional capacity or RFC is an ALJ's assessment of an applicant's ability to perform work activities on a sustained basis despite the limitations that the applicant's impairments create.  *Maffia v. Comm'r of Soc. Sec.*, 291 Fed. Appx. 261, 263 (11th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)).  The determination of an applicant's residual functional capacity is within the authority of the ALJ, and "the ALJ considers all of the evidence in the record in determining the claimant's RFC."  *Himes v. Comm'r of Soc. Sec.*, 585 Fed. Appx. 758, 764 (11th Cir. 2014).  Here, the ALJ found that Mr. Warden has the RFC to perform light work with a number of postural limitations.  (Doc. 8-3, pp. 29-33).

Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . a job is in this

---

[2] Mr. Warden does not challenge the ALJ's findings regarding Mr. Warden's mental RFC.  (*See* Doc. 13, pp. 10-14).  Therefore, the Court limits its analysis to the ALJ's findings regarding Mr. Warden's physical RFC.

category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).  Light work also requires that a claimant stand or walk for up to 6 hours and sit for up to 2 hours in an 8-hour workday.  Social Security Ruling (SSR) 83-10, 1983 WL 31251, at 6.

In reaching his physical RFC determination, the ALJ relied on the opinions of two physicians, Dr. Ledet and Dr. Heilpern.  "'[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.'"  *Gaskin*, 533 Fed. Appx. at 931 (quoting *Winschel,* 631 F.3d at 1179).  However, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion."  *McCloud v. Barnhart*, 166 Fed. Appx. 410, 418-19 (11th Cir. 2006); *see also Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  In this case, the ALJ clearly articulated the reasons for giving particular weight to different medical opinions, and the ALJ's decision is supported by objective medical evidence.

Dr. Ledet, a one-time consultative examiner, examined Mr. Warden on July 16, 2011.  (Doc. 8-8, p. 49).  Dr. Ledet found Mr. Warden tested positive for arthritis and stiffness in his knees and lower back.  Dr. Ledet noted that Mr. Warden had a slightly antalgic gait.  But, Mr. Warden could walk on his heels, walk heel to toe, squat, and rise from a squatted position without difficulty.  (Doc.

8-8, pp. 51-52). Dr. Ledet found that Mr. Warden had full muscle strength in all of his extremities. (Doc. 8-8, p. 52). Based on his examination, Dr. Ledet concluded that Mr. Warden has a decreased range of motion in his left knee, and his left knee is unstable. (Doc. 8-8, p. 53). Dr. Ledet opined that Mr. Warden has mild-to-moderate difficulty with ambulation and that Mr. Warden requires a brace for knee stability and to assist with ambulation. (Doc. 8-8, p. 53).

The ALJ gave little weight to Dr. Ledet's opinion that Mr. Warden experiences mild to moderate difficulty with ambulation because Dr. Ledet's opinion was inconsistent with Dr. Ledet's reported findings of Mr. Warden's physical capability to walk, squat, and rise without difficulty. (Doc.8-3, p. 33).

As a one-time examiner, Dr. Ledet's opinion is not entitled to deference. *Crawford*, 363 F.3d at 1160 (holding that, in general, the opinion of a one-time examining physician is "not entitled to great weight") (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). And the ALJ specifically noted that Dr. Ledet's findings were inconsistent with his conclusions regarding Mr. Warden's physical limitations. Substantial evidence supports this determination. *See Poellnitz v. Astrue*, 349 Fed. Appx. 500, 503 (11th Cir. 2009) (holding that the opinion of an examining physician as to marked and extreme limitations was properly discounted due to her own reports); *Russell v. Astrue*, 331 Fed. Appx. 678, 682 (11th Cir. 2009) (ALJ properly rejected an examining physician's opinion

because the opinion conflicted with the claimant's other medical records and the physician's own examination of the claimant).

State agency medical consultant, Dr. Heilpern, conducted a physical RFC assessment on July 28, 2011. Dr. Heilpern opined that Mr. Warden can frequently lift 25 pounds, stand or walk about 6 hours in an 8 hour workday, and occasionally kneel, crouch, and crawl. (Doc. 8-8, pp. 70-71). Dr. Heilpern also found that Mr. Warden can frequently climb ramps and stairs and stoop, and can occasionally climb ladders, ropes, and scaffolds, balance, kneel, crouch, and crawl. (Doc. 8-8, p. 72). Dr. Heilpern also concluded that Mr. Warden should avoid unrestricted heights and uneven terrain. (Doc. 8-8, p. 73).

The ALJ noted that as a non-examining physician, Dr. Heilpern's opinion is not entitled to as much weight as examining and treating physicians. The ALJ then assigned some weight to Dr. Heilpern's opinion because "there exist a number of other reasons to reach similar conclusions (as explained through this decision)." (Doc. 8-3, p.33). Although the ALJ did not say so explicitly, because the ALJ thoroughly reviewed all of the objective medical evidence and the record as whole (*see* Doc. 8-3, pp. 30-33), the Court finds that the ALJ gave some weight to Dr. Heilpern's opinion, in essence, because it is consistent with Mr. Warden's treatment notes and medical history. Substantial evidence supports this decision.

Regarding Mr. Warden's reported back pain, an x-ray from December 1, 2009 reflected "no acute compression fracture or spondylolisthesis" and "moderate degenerative disc disease at L4-L5 and L5-S1." (Doc. 8-9, p. 73). Findings from a CT lumbar spine on August 16, 2010 found "mild-to-moderate bilateral neural foraminal narrowing" in L4-L5 and "mild to moderate bilateral neuroforaminal narrowing" in L5-S1. (Doc. 8-9, p. 9).

Regarding Mr. Warden's knee impairments, medical images from October 2008 reflected calcified menisci in both knees but no fracture, dislocation, or bone erosion. (Doc. 8-9, p. 75). June 2011 x-rays showed chondrocalcinosis in both knees with "very minimal narrowing and "mild degenerative change." (Doc. 8-8, p. 17). An April 2011 x-ray produced results similar to the June 2011 x-ray report. (Doc. 8-10, p. 82). An MRI report of the left knee from February 14, 2012 showed that Mr. Warden had "intrameniscal degenerative change of the posterior horn of the medial meniscus without a discrete tear" and "mild patellofemoral compartment space narrowing with marginal osteophyte formation." (Doc. 8-10, pp. 42-43). These mild to moderate medical findings regarding Mr. Warden's back and knee support Dr. Heilpern's medical opinion and the ALJ's decision regarding Mr. Warden's physical RFC.[3]  *See Moncreif v. Astrue*, 300 Fed. Appx. 879, 881

---

[3] The record contains numerous treatment notes from Mr. Warden's visits to VA medical centers. Between 2010 and 2012, various medical providers at the VA medical centers diagnosed Mr. Warden with moderate degenerative disc disease, bilateral degenerative arthritis in the knees,

(where a consulting physician's opinions are "consistent with the medical evidence," the ALJ is "required to give his opinion great weight") (citing C.F.R. § 404.1527(f)(2)(i)).[4]

## V. CONCLUSION

---

degenerative changes in the lumbar spine, and hypertension. (Doc. 8-3, p. 43; Doc. 8-8, p. 17; Doc. 8-8, pp. 23-25; Doc. 8-9, pp. 3-9; Doc. 8-10, p. 82). These treatment notes do not contain an opinion about how these diagnoses and impairments specifically impact Mr. Warden's ability to work. A finding of disability hinges on the functional limitations that accompany a condition, not the existence of the condition itself. *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."); *see also Obsborn v.Barnhart*, 194 Fed. Appx. 654, 667 (11th Cir. 2006) ("the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality"); *see also* 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities"). Therefore, it was within the ALJ's province, when considering the entire record, to determine that despite Mr. Warden's physical conditions, Mr. Warden could perform light work with various postural limitations.

The Court also notes that the VA concluded that Mr. Warden was 50% disabled due to a mood disorder associated with arthritis in the right knee. (Doc. 8-8, p. 79). *See Kemp v. Astrue,* 308 Fed. Appx. 423, 426 (11th Cir. 2009) ("A VA rating is certainly not binding. . . but it is evidence that should be considered and is entitled to great weight.") (*citing Rodriguez v. Schweiker,* 640 F.2d 682, 686 (5th Cir. 1981)). In this case, the VA examiner's conclusions focused on Mr. Warden's mental impairments. The VA disability determination does not explain in detail how Mr. Warden's knee arthritis accounts for the disability rating provided. (Doc. 8-8. pp. 80-84). Because Mr. Warden has not challenged the ALJ's mental RFC, and because the VA did not explain how Mr. Warden's knee pain impacts his ability to work, the ALJ properly accounted for the VA's opinion. (Doc. 8-3, pp. 32-33).

[4] On the date of the ALJ's decision, Mr. Warden was one day shy of his 50th birthday. (Doc. 13, p. 12, n. 1). Mr. Warden argues that at most, he can perform sedentary work only and if he can perform only sedentary work, then the ALJ must conclude that Mr. Warden presumptively is entitled to disability benefits pursuant to Grid Rule 201.12. (Doc. 13, pp. 12-13). Under this rule, an individual approaching advanced age (50-54) with no skills and only a high school degree is "disabled" under the grid. *See* C.F.R. § 404, Subpart P, Appx. 2, Table 1. Because substantial evidence supports the ALJ's decision that Mr. Warden can perform light work, the ALJ was not required to consider Grid Rule 201.12.

For the reasons discussed above, the Court finds that the ALJ's decision is supported by substantial evidence, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Accordingly, the Court affirms the Commissioner's decision. The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this August 31, 2015.

*/s/ Madeline H. Haikala*
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE